IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTY L. BERRY ) | |
| ) | |
| v. ) | No. 3:12-1218 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:   The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 16). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I.  Introduction

Plaintiff filed his benefits application on March 24, 2008, alleging disability since November 14, 2002, due to breathing problems, heart disorder, back disorder, and sinus

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

problems. (Tr. 11, 66) That application was denied at the initial and reconsideration stages of agency review, whereupon plaintiff requested *de novo* hearing of her claim by an Administrative Law Judge (ALJ). A hearing was held on April 20, 2011 (Tr. 25-59), and testimony was received from plaintiff and from an impartial vocational expert. Plaintiff was represented by counsel at the hearing. At the conclusion of the hearing, the ALJ took the matter under advisement, until May 2, 2011, when he issued a written decision in which he found plaintiff not disabled. (Tr. 11-20) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from January 21, 2006, the day following the date of the January 20, 2006 prior initial determination, through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine with lumbar radiculopathy, status post surgery at L4-S1; chronic obstructive pulmonary disease; diabetes mellitus; hypertension and coronary artery disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) (including lifting 20 pounds and frequently lifting 10 pounds, sitting a full eight hours and standing or walking 6 hours in an eight-hour workday) except he can only occasionally push or pull, climb, bend, squat[], stoop[], and kneel[]; and should avoid

  concentrated exposure to extreme temp, dusts, fumes, gases and irritating inhalants.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on February 2, 1954 and was 55 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11.  The claimant was not under a disability, as defined in the Social Security Act, from January 21, 2006, the day following the date of the January 20, 2006 prior initial determination, through December 31, 2009, the date last insured (20 CFR 404.1520(g)).

(Tr. 13-14, 18-20)

  On October 3, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. <u>Id.</u>

## II. Review of the Record

The following brief summary of the record is taken from plaintiff's brief, Docket Entry No. 15 at 2-4:

Plaintiff is currently fifty-nine years of age and has a high school or greater education. (Tr. 161). Mr. Berry has past relevant work experience as a firefighter and emergency medical technician. (Tr. 157).

Plaintiff alleges disability due to a combination of severe physical and mental impairments including (1) lumbar degenerative disc disease; (2) lumbar radiculopathy; (3) status post L4-S1 fusion; (4) chronic obstructive pulmonary disease (COPD); (5) diabetes mellitus; (6) hypertension; and (7) coronary artery disease.

Plaintiff's primary impairments relate to his history of COPD and lumbar degenerative disc disease. Mr. Berry's history of back problems date back to approximately 2002. On January 11, 2007, Plaintiff presented to neurosurgeon Douglas Mathews, M.D. for evaluation of worsening back and left leg radicular pain. (Tr. 313). Dr. Mathews noted that a prior lumbar MRI scan performed in 2005 demonstrated marked degeneration at L5-S1 with a disc herniation. On examination, Plaintiff had a positive straight leg raise on the left at sixty degrees. (Id.). Dr. Mathews ordered a new lumbar MRI, which revealed stenosis and narrowing at L4-5 and L5-S1. (Tr. 312). In follow-up, Dr. Mathews stated that Plaintiff "appear[ed] to have significantly collapsed disc, Modic changes at L5-S1 and bilateral foraminal stenosis." Surgery was recommended. (Tr. 311). On April 2, 2007, Dr. Mathews performed a microscopic decompressive lumbar laminectomy at L4-5 and L5-S1 with foraminotomies at L4, L5, and S1 and removal of herniated disc fragment, bone marrow aspiration and arthrodesis of L4 through S1. (Tr. 275).

Regarding COPD, Plaintiff has been experiencing severe shortness of breath, wheezing and coughing since he was forced to retire as a firefighter in 2002. (See Tr. 14, 38, 330). A January 2006 treatment note reflects that pulmonary function tests showed moderate to moderately severe obstructive defect with decreased diffusion capacity. (Tr. 366). At the hearing, Plaintiff testified that, if he exerted himself significantly, he became easily short of breath. He further testified that he has trouble breathing in hot temperatures. (Tr. 39).

Plaintiff's treating pulmonologist Clyde Heflin, Dr. M.D. completed a Medical Source Statement dated April 20, 2011 endorsing limitations that would preclude fulltime work at any exertional level. (Tr. 525-27). Dr. Heflin stated, among other things, that Plaintiff could not be reasonably expected to be reliable in fulltime work without missing more that two days per month. He opined that Plaintiff could sit eight total hour for thirty minutes at a time in a regular workday. He felt Plaintiff could only stand for thirty minutes at a time and walk for five minutes at a time. Dr. Heflin answered "yes" in response to whether Plaintiff's limitations existed on or before December 31, 2009. (Tr. 527).

Darice Spackman, PA-C, a physician assistant in the office Dr. Mathews completed a Medical Source Statement dated May 2, 2011 endorsing limitations that would preclude fulltime work at any exertional level. Like Dr. Heflin, Ms. Spackman answered in the affirmative regarding whether Plaintiff's limitations were as provided on or before December 31, 2009. (Tr. 529).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that

agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational

factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined

7

effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff raises one challenge to the ALJ's decision, arguing that the opinion of treating pulmonologist Dr. Heflin was not properly weighed, inasmuch as the ALJ did not specify the weight he assigned but appeared to reject the opinion entirely, without considering Dr. Heflin's specialty in pulmonary medicine and without recognizing that Dr. Heflin had, in fact, treated plaintiff prior to plaintiff's date last insured of December 31, 2009. The ALJ's rationale concerning Dr. Heflin's opinion is as follows:

> The day of the hearing, April 20, 2011, Dr. Asa Heflin, M.D., rendered his opinion as to the claimant's physical functioning. Dr. Heflin's records were provided; however, they do not commence until after the date last insured. Dr. Heflin asserts the claimant [] has limitations from fixed and variable obstructive lung disease that include a total inability to lift and/or carry any amount of weight; sitting and standing each restricted to only 30 minutes at one time and walking restricted to five minutes at one time; no bending, pushing or pulling; and limitation of exposure to pulmonary irritants and temperature extremes. He claims these limitations were present prior to the date last insured in December 2009, in response to a largely leading question on the form he was provided (Ex. 19F [Tr. 525-27]). This response is questionable, as his records do not show he was treating the claimant at this time (*See* Ex. 14F). The medical evidence of record, already discussed above, disputes that the claimant's conditions were this limiting prior to the date last insured. Dr. Heflin's opinion is inconsistent with this evidence, including the pulmonary function testing. Dr. Heflin's own records, from after the date last insured, still do not document this level of severity, with him describing only intermittent respiratory symptoms and mild dyspnea in February 2011 (Ex. 14F at 2). His opinion is overly restrictive.

(Tr. 18)

Plaintiff argues that, "contrary to the ALJ's statements, Mr. Berry was treated by Dr. Heflin prior to the date last insured and as early as March 2002 with indications at that time of 'severe dyspnea,' cough and sputum production due to deconditioning, reactive airways disease and asthma. (Tr. 380, 389-92)." (Docket Entry No. 15 at 13) The pages from the medical record cited by plaintiff document office visits to Dr. Heflin in March and July of 2002 (Tr. 380, 391-92), and in January 2004 (Tr. 389-90). In response, defendant acknowledges that, "although Dr. Heflin may have treated Plaintiff through January 2004, two full years before the earliest date that Plaintiff could be found disabled, it does not appear that his treatment of Plaintiff resumed until April 29, 2010 (Tr. 448-49), about 4 months after Plaintiff's DLI. [Thus], the ALJ correctly observed that Dr. Heflin's opinion was questionable in light of the fact that he was not treating Plaintiff at the time of his DLI [or anytime during the period at issue]." (Docket Entry No. 16 at 11-12 n. 11)

Lost on plaintiff's counsel, defendant's counsel, and the ALJ is the fact that Dr. Heflin did in fact treat plaintiff prior to his date last insured, not only in the more remote years of 2002-2004, but also at yearly intervals from 2006-2011. As revealed to the ALJ at plaintiff's hearing (Tr. 32), Dr. Heflin treated plaintiff on January 5, 2006, when diminished breath sounds and sparse wheezing was noted on examination, and pulmonary function tests (PFTs) showed moderate to moderately severe obstructive defect with decreased diffusion capacity (Tr. 366); Dr. Heflin added the medication Spiriva due to plaintiff's uncontrolled symptoms and told plaintiff to follow up with him in one year. (Tr. 367) PFTs on January 4, 2007 revealed mild to moderate airway obstruction. (Tr. 411-12) On January 8, 2008, Dr.

9

Heflin noted that PFTs continued to show mild airway obstruction; plaintiff was given "another lecture on smoking cessation" and told to follow up in one year. (Tr. 360-61) On March 3, 2009, Dr. Heflin noted that "Christy is in today for follow-up of asthma and mild IF [(interstitial fibrosis)]. He is doing well. He has had one or two episodes where he required some rescue inhalers; otherwise, he has been taking Advair on a fairly routine basis. He is having no significant cough or sputum production." (Tr. 353) Plaintiff's lungs were clear upon examination, and his chest x-ray was only mildly abnormal due to the interstitial fibrosis. Dr. Heflin did not order PFTs, but assessed plaintiff's pulmonary condition as stable and told him to follow up again in one year. Id. As referenced by the ALJ, Dr. Heflin's treatment notes which postdate plaintiff's date last insured show him to be "doing relatively well" in April 2010 (Tr. 448) and February 2011 (Tr. 446), though on the latter occasion it was noted that his most recent PFTs had shown significant fixed obstruction, and plaintiff was instructed to follow up in six months instead of one year.

    The medical opinion of a treating source is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(c)(2) if it is well supported by objective, clinical evidence and not substantially opposed on the record. Even where such an opinion is not entitled to controlling weight, the Sixth Circuit has stated that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. . . ." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, ALJs must provide "good reasons" for discounting the weight of a treating source opinion. See 20 C.F.R § 404.1527(c)(2); Rogers, 486 F.3d at 242.

    In this case, the ALJ erroneously questioned Dr. Heflin's assessment of

plaintiff's limitations prior to December 31, 2009, based on the ALJ's misperception that Dr. Heflin only began treating plaintiff in 2010. If this were the only reason given in support of the finding that Dr. Heflin's opinion is "overly restrictive," then clearly the requirement of good reason giving would not be met. However, the ALJ further reasoned that Dr. Heflin's opinion is inconsistent with the medical evidence, including PFT results, obtained during the relevant time. In reviewing that evidence, the ALJ twice referenced Dr. Heflin's treatment notes, though he erroneously ascribed them to Dr. Graves (the cardiologist caring for plaintiff in consultation with Dr. Heflin), noting that PFTs in January 2006 showed "no more than moderate or moderate to severe results" (Tr. 15) and that plaintiff had continued to smoke against medical advice, quitting only after his date last insured. (Tr. 18) The ALJ also noted that other PFT results had indicated mild or moderate obstructive disease, id., consistent with the medical records from Dr. Heflin reviewed above. (Tr. 360, 411-12) Finally, the ALJ appropriately noted that Dr. Heflin's treatment notes which postdated plaintiff's date last insured did not support the severity of restrictions which he assessed, as in 2010 his lungs were clear and he was doing relatively well (Tr. 448), and in 2011 he reported only intermittent acute asthmatic symptoms and mild dyspnea. (Tr. 446)

    In view of the foregoing good reasons given for discounting the weight of Dr. Heflin's 2011 assessment, the undersigned concludes that the ALJ's rationale is substantially supported and in compliance with the requirements of 20 C.F.R. § 404.1527(c)(2). Moreover, the ALJ appropriately noted other medical and nonmedical evidence indicating that plaintiff's pulmonary impairment did not limit him to the extent opined by Dr. Heflin, including the opinion of consultative examiner Dr. Noordizj based on mild PFT results in January 2006 (Tr. 16, 263), and that of Dr. Davis in September 2009, when PFTs showed

11

moderately severe obstruction but plaintiff was nonetheless determined to be able to perform a range of light work. (Tr. 332, 334) Thus, despite Dr. Heflin's specialty in pulmonary medicine, the ALJ properly discounted his assessment as overly restrictive, implicitly rejecting it to the extent that is was inconsistent with the ability to perform this restricted range of light work.

Plaintiff's second argument does not challenge the ALJ's decision, but seeks remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), for agency consideration of new and material evidence, i.e., the opinion of physician's assistant Darice Spackman, PA-C. Invoking sentence six, the court may order a return to the agency for its adjudicators to consider evidence that was not previously before them, "but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984) (per curiam). As noted above, the burden of showing that a remand is appropriate is on the claimant. Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986).

Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). Even assuming the newness and materiality of Ms. Spackman's opinion, the requisite good cause showing has not been made.

12

Plaintiff merely states that "there is good cause for failure to incorporate Ms. Spackman's opinion into the record at the hearing level. The opinion did not exist at that time." (Docket Entry No. 15 at 14) However, this statement merely establishes the newness of the evidence. Foster, supra (quoting Sullivan v. Finkelstein, 496 U.S. at 626). The Sixth Circuit takes a "harder line" on the good cause test, requiring a "valid reason" for not procuring and submitting evidence prior to the ALJ hearing. Id. (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d at 554). No such reason has been offered in this case. Accordingly, plaintiff has failed to meet his burden of showing that a sentence six remand is appropriate.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 8th day of June, 2015.

                                                               s/ John S. Bryant
                                                              JOHN S. BRYANT
                                                              UNITED STATES MAGISTRATE JUDGE